IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**WILLIE JAMES BOONE,**

      **Petitioner,**

**vs.**                                          **Case No. 4:11cv327-RH/CAS**

**MICHAEL D. CREWS, Secretary,**
**Florida Department of Corrections,[1]**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On July 1, 2011, Petitioner Willie James Boone, proceeding pro se, filed a

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Doc. 1.  After direction

by this Court, Petitioner ultimately filed a second amended § 2254 petition on

December 13, 2011.  Doc. 10.  Petitioner challenges his conviction and sentence

imposed by the Second Judicial Circuit, Jefferson County, on May 26, 2006, following a

jury trial.  *Id*.  Respondent filed an answer to the petition on September 18, 2012, with

exhibits.  Doc. 26.  Petitioner filed a reply on November 30, 2012.  Doc. 32.

_____

[1]The Clerk of Court shall substitute Michael D. Crews as Secretary of the Florida
Department of Corrections in place of Kenneth S. Tucker.  Michael D. Crews became
Secretary on December 17, 2012, and shall be automatically substituted pursuant to
Federal Rule of Civil Procedure 25(d).

The matter was referred to the undersigned United States Magistrate Judge for issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters, pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter.  *See* Rule 8(a), R. Gov. § 2254 Cases.  The pleadings and attachments before the Court show that the petition should be denied.

## Background and Procedural History

By information filed July 26, 2005, in the Second Judicial Circuit, Jefferson County, in case number 05-097-CFA, the State of Florida charged Petitioner Willie James Boone with three counts in connection with events that took place on or about June 18, 2005, involving a victim, D.J.:  (1) burglary of a dwelling with person assaulted, a first degree felony, in violation of section 810.02(2)(a), Florida Statutes; (2) sexual battery by threats reasonably believed, a first degree felony, in violation of section 794.011(4), Florida Statutes; and (3) sexual battery by threats reasonably believed, a first degree felony, in violation of section 794.011(4), a first degree felony, in violation of section 794.011(4), Florida Statutes.  Doc. 22 Ex. B.  Petitioner proceeded to a jury trial on May 25 and 26, 2006, during which the State presented several witnesses, including the victim, D.J.  *See id.* Exs. N1, N2, N3 (trial transcripts).  D.J. testified concerning her initial encounters with Boone in June 2005 as well as the events resulting in the charges in this case, when Boone broke into her home and raped her in the early morning hours of June 18, 2005.  *Id*. Ex. N1 at 84-132.  Boone testified in his defense

as the only witness.  *See id.* at 293-333.  The jury found Boone guilty as charged on

Counts 1 and 2, and not guilty on Count 3.  *Id*. at 384-85; Ex. O.  The court adjudicated

him guilty and, on May 26, 2006, sentenced him to life in prison on Count 1 and thirty

(30) years in prison on Count 2, to run consecutive to the sentence on Count 1, with

credit for 345 days time served in the county jail.  Doc. 26 Ex. N1 at 386-89, Ex. P.

Petitioner timely appealed his judgment and sentence to the First District Court

of Appeal (DCA), assigned case number 1D06-2900.  *See* Doc. 26 Exs. Q, R.

Petitioner's counsel filed an Initial Brief pursuant to Anders v. California, 386 U.S. 738

(1967).  Doc. 26 Ex. R.  Petitioner filed a pro se brief and raised two points: (1) whether

the trial court abused its discretion in allowing similar fact evidence of other crimes,

wrongs, or acts to be introduced at trial in violation of the Williams Rule and section

90.404(2)(a), Florida Statutes; and (2) whether the trial court abused its discretion in

denying trial counsel and pro se motions to withdraw and request for appointment of a

DNA expert.  *Id*. Ex. T at I.  The State did not file an Answer Brief.  *See* online docket

for 1D06-2900 at www.1dca.org.  The First DCA affirmed the case without an opinion

on September 12, 2008.  Doc. 26 Ex. U; *see* Boone v. State, 990 So. 2d 1061 (Fla. 1st

DCA 2008) (table).  The mandate issued October 8, 2008.  *See* online docket for 1D06-

2900 at www.1dca.org.

On January 16, 2009, Petitioner filed a motion for post-conviction relief pursuant

to Florida Rule of Criminal Procedure 3.850 in the state trial court.  *See* Doc. 26 Ex. V.

Petitioner raised six grounds.  *Id*.  The State filed a response.  *Id*. Ex. W.  The state

post-conviction trial court ordered an evidentiary hearing on the first and fourth grounds.

*Id*. Ex. X.  The court did not appoint counsel for petitioner.  *Id*. Ex. Y at 2-3.  The

hearing took place on July 16, 2010, during which Petitioner and his trial counsel

testified.  *Id*. Ex. Y.  By order rendered December 20, 2012, the court denied the Rule

3.850 motion.  *Id*. Ex. Z.

Petitioner appealed to the First DCA and filed an Initial Brief, in case number

1D10-6781 raising one point: The state post-conviction trial court "abused its discretion

when it denied [Boone's] motion for post conviction relief where the claims were not

conclusively refuted, exceeding from the essential requirements of the law."  Doc. 26

Ex. AA at ii.  The State did not file an Answer Brief.  *See id*. Ex. CC.  The First DCA

affirmed the case without an opinion on May 3, 2011.  *Id*. Ex. DD; *see* Boone v. State,

66 So. 3d 941 (Fla. 1st DCA 2011) (table).  The mandate issued August 17, 2011.  Doc.

26 Ex. DD.

As indicated above, Petitioner Boone filed his pro se § 2254 petition in this Court

on July 1, 2011.  Doc. 1.  In his petition, as amended, Boone raises several grounds:

> (1) Trial counsel rendered ineffective assistance by failing to object to the
> State's perpetuated videotaped testimony of Dr. Javier Escobar and
> Elaine Soskis, R.N., and denying Petitioner his right to cross-examine
> these witnesses.  Doc. 10 at 4.
>
> (2) Trial counsel rendered ineffective assistance by failing to secure
> expert shoe print witness and challenge the sufficiency of the State's case
> by filing a motion to suppress the shoe-print evidence.  *Id*. at 4, 4d-4e.
>
> (3) Trial counsel filed a motion to withdraw and Petitioner filed a pro se
> motion to appoint new counsel because of a conflict, and Petitioner
> asserts counsel failed to investigate the State's DNA evidence.  *Id*. at 5-
> 5c.

(4) Trial counsel rendered ineffective assistance by failing "to object to the introduction of electropherograms, medical charts, and medical diagrams not corroborated by sworn testimony." *Id*. at 5.  Petitioner asserts this evidence was presented without Petitioner having the opportunity to confront and cross-examine Dr. Escobar and Nurse Soskis, who performed the lab test.  *Id*.

(5) "[T]he Prosecution willfully and intentionally thwart[ed] the Petitioner in his preparation of defense by withholding favorable evidence," specifically DNA evidence reports from FDLE, electropherograms of DNA profiles, and photographs of Petitioner's arrest, and if this evidence had "been disclosed in a timely manner, would have allowed the defense to investigate and make timely objections of the evidence." *Id*. at 5d.

(6) Trial counsel rendered ineffective assistance by failing "to object, and move the court for a 'Frye Hearing' after Prosecution offer[ed] expert witness Valicia Hickman['s] testimony that the DNA evidence on vaginal swab taken from victim match[ed] Petitioner['s] genetic type, and her opinion that such match would occur, without Mrs. Hickman's qualification to give expert opinion in the error of population." *Id*. at 5e.

(7) The trial court abused its "judicial authority in allowing the similar fact evidence of other crimes, wrongs, or acts to be introduced at trial, in violation of the Petitioner's state and federal constitution[al] rights." *Id*. at 6b (labeled as "GROUND ONE" in pages attached to second amended § 2254 petition).

(8) The trial court abused its "judicial authority in denying trial counsel['']s and [Petitioner's] pro se motion to withdraw, and verbal request for the appointment of DNA expert, in violation of the Petitioner's state and federal constitution[al] rights." *Id*. at 6c (labeled as "GROUND TWO" in pages attached to second amended § 2254 petition).

Each ground is analyzed below, beginning with the grounds that allege claims of

ineffective assistance of counsel (IAC), Grounds 1, 2, 3, 4, and 6, and then followed by

the remaining grounds, which allege claims of trial court error.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective

Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for

persons in state custody.  Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).  *See* Williams v. Taylor, 529 U.S. 362 (2000); Gill v. Mecusker,

633 F.3d 1272 (11th Cir. 2011).

If a state prisoner's habeas petition "includes a claim that has been 'adjudicated

on the merits in State court proceedings,' § 2254(d), an additional restriction applies."

Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).  The federal court may not grant

relief unless the state court's adjudication of the claim:  (1) resulted in a decision that

was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States; or (2) resulted in a

decision that was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).  "This is a

'difficult to meet' and 'highly deferential standard for evaluating state-court rulings,

which demands that state-court decisions be given the benefit of the doubt.'" <u>Cullen</u>,

131 S.Ct. at 1398 (quoting <u>Harrington v. Richter</u>, 131 S.Ct. 770, 786 (2011), and

<u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the

record that was before the state court that adjudicated the claim on the merits." <u>Cullen</u>,

131 S.Ct. at 1388.

In the first set of grounds addressed herein, Grounds 1, 2, 3, 4, and 6, Petitioner

Boone alleges IAC claims.  In <u>Strickland v. Washington</u>, the U.S. Supreme Court

adopted a two-part test for such claims:

> First, the defendant must show that counsel's performance was deficient.
> This requires showing that counsel made errors so serious that counsel
> was not functioning as the "counsel" guaranteed the defendant by the
> Sixth Amendment.  Second, the defendant must show that the deficient
> performance prejudiced the defense.  This requires showing that
> counsel's errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

466 U.S. 668, 687 (1984).  To demonstrate ineffectiveness, a "defendant must show

that counsel's performance fell below an objective standard of reasonableness." *Id.* at

688.  To demonstrate prejudice, a defendant "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Id.* at 694.  "A reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Id.*  For this Court's purposes,

importantly, "[t]he question 'is not whether a federal court believes the state court's

determination' under the <u>Strickland</u> standard 'was incorrect but whether that

determination was unreasonable – a substantially higher threshold.'" <u>Knowles v.</u>

<u>Mirzayance</u>, 556 U.S. 111, 123 (2009) (quoting <u>Schiro v. Landrigan</u>, 550 U.S. 465, 473

(2007)).  "And, because the <u>Strickland</u> standard is a general standard, a state court has

even more latitude to reasonably determine that a defendant has not satisfied that

standard."  *Id.*  It is a "doubly deferential judicial review that applies to a <u>Strickland</u> claim

evaluated under the § 2254(d)(1) standard."  *Id.*

### <u>Ground 1</u>: IAC – Perpetuated Testimony

As referenced above, in his first ground, Petitioner Boone asserts his trial

counsel rendered ineffective assistance "by failing to object to the State's perpetuated

testimony, and Petitioner's right to cross-examine witnesses."  Doc. 10 at 4.  Boone

indicates trial counsel failed to object "to the prosecutor's motion to perpetuate

testimony in writing or on the record of the videotape depositions of M.D. Javier

Escobar and R.N. Elaine Soskis, which denied Petitioner Boone his constitutional right

to cross-examine."  *Id*.  Boone asserts he was denied his due process right to confront

and cross-examine Dr. Escobar and Nurse Soskis during the perpetuated videotaped

depositions, which were introduced by the State as substantial evidence without

objection by defense counsel.  *Id*. at 4b.  Boone asserts that "[b]y trial counsel failing to

secure Petitioner Boone['s] presence at these videotaped depositions, trial counsel

effectively denied the Petitioner his right to question these witnesses, or at least furnish

questions to probe the prior writing in their reports."  *Id*. at 4c.  Boone asserts, "This

testimony was crucial evidence for the prosecution, and the Petitioner was effectively

denied his right to confront these witnesses, and [his] right to effective assistance of

counsel [as] counsel['s] failure to perform his duty as a defense advocate, and that

failure did create prejudice, because the Petitioner cannot, nor could not submit

questions to a videotape, which effectively prevented Petitioner Boone from presenting evidence to a jury for a proper factual determination due to the fact the evidence would establish substantial doubt the Petitioner committed the crime." *Id.*

In the answer, Respondent asserts Petitioner submitted a substantially similar claim to the state post-conviction trial court as the first ground in his Rule 3.850 motion. Doc. 26 at 10.  Respondent explains the state court denied relief on the merits after an evidentiary hearing, Petitioner appealed, and the First DCA per curiam affirmed the state post-conviction trial court's order. *Id*. at 11-12.  Respondent asserts there is nothing unreasonable in the state post-conviction court's determination that Petitioner's absence from the depositions did not affect the trial's outcome. *Id*. at 15.

In his reply, Boone asserts he was denied his right to confront and cross-examine these witnesses during the videotaped depositions and at the trial.  Doc. 32 at 3-4.  Boone asserts that, at the evidentiary hearing, trial counsel testified he had no recollection as to why Petitioner was not present at the videotaped depositions and this failure of counsel clearly satisfies the first prong of Strickland. *Id*. at 6.

As Respondent points out, Petitioner Boone presented this ground as the first claim in his state Rule 3.850 motion. *See* Doc. 26 Ex. V at 2-6.  After the evidentiary hearing, the state post-conviction trial court denied the claim, making the following findings:

> Defendant alleges counsel was ineffective for failing to object to the State's motions to perpetuate the testimony of Elaine Soskis, R.N., and Javier Escobar, M.D., and for failing to arrange for Defendant's presence, either in person or by video, at the depositions, effectively denying Defendant his right to confront these witnesses.  Defendant also alleges

counsel was ineffective for failing to object to the videotaped depositions being viewed by the jury during deliberations.  The Court orally denied this claim at the evidentiary hearing.

Doc. 26 Ex. Z at 47.  Indeed, at the conclusion of the hearing, the state post-conviction court made the following findings on the record:

> The Court has considered the evidence presented today and argument of the defendant and counsel for the State.  It is the Court's finding and opinion of the Court that you have suffered no prejudice, Mr. Boone, as a consequence of any claimed deficiency of Mr. Dombrowsky [defense trial counsel] and not having you present during the depositions or not introducing or attempting to introduce other evidence that you're complaining of.  It does not appear that any of the deficiencies that you claim to exist effected the outcome of these proceedings.  There was more than sufficient evidence to support the conviction.
>
> The Court is going to deny the motion for post-conviction relief based upon the Court's finding that there's been no deficient performance or services by counsel.  And even if there might be some deficiency because you did not attend the depositions or clearly your attendance would not have assisted counsel in cross examining nurses and doctors where your expertise in that area has not been shown.  It certainly would not have effected the outcome of the trial had you been present at the depositions.

*Id*. Ex. Y at 28.  The state post-conviction trial court's rulings, affirmed on appeal without opinion, are entitled to AEDPA deference and are supported by the record.  *See* 28 U.S.C. § 2254(d); Harrington v. Richter, 131 S.Ct. 770, 784-85 (2011); Wright v. Sec'y of Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002).

Specifically, at the state post-conviction evidentiary hearing, Boone's trial counsel, Alexander Dombrowsky, testified.  Doc. 26 Ex. Y at 6-17.  Mr. Dombrowsky practices criminal law and has been board certified since 2005.  *Id*. at 6.  He was

appointed by the court to represent Boone in September 2006 and the case proceeded

to trial.  *Id*. at 7.  He described his relationship with Boone:

> Mr. Boone and my relationship was an attorney-client relationship.  It was
> difficult to say the least.  Mr. Boone was very adversarial from our very
> first conversation.  He informed me that he had in his past fired two or
> three attorneys and if I didn't watch out he would fire me as well.

*Id*.  Mr. Dombrowsky testified that Boone "continuously wanted his case to be brought

to trial faster than the normal course that we were proceeding on" and, at one point,

Boone tried to have him removed from the case, for which a <u>Nelson</u> hearing was held

April 24, 2006.  *Id*. at 7-9.  Mr. Dombrowsky testified that the trial was scheduled for

May 2006 and "[i]t was discovered that Doctor Escobar and Nurse [Soskis] would not

be available for the May trial date."  *Id*. at 9.  Accordingly, the State moved to

perpetuate their testimony, and Mr. Dombrowsky did not oppose the motion.  *Id*.  He

explained his reasoning:

> Q Why didn't you oppose it?
>
> A  I found no grounds to oppose the motion.  Namely these witnesses
> were – merely collected the DNA evidence and did a medical examination
> of the victim in this case.  And I found no reason to require them to come
> to the trial.
>
> Q Was that decision effected by the defendant's continuing desire for a
> quick trial, for a trial as soon as possible?
>
> A In part, but I wouldn't say that was the driving factor.  The driving factor
> was my decision not necessarily to require them to come.  There really
> wasn't much more other than their reports that they would come in and
> testify to.

*Id*. at 9-10.  Mr. Dombrowsky explained that Boone did not attend the depositions but

he did not recall why, although he did not think Boone could have contributed anything

to the deposition process given the defense position taken in the case:

> Q The deposition transcripts indicate that the parties to the deposition did
> not include the defendant, Mr. Boone.
>
> A That's correct.
>
> Q Do you have an recollection as to why Mr. Boone wasn't present?
>
> A No, sir.  I don't have any recollection as to why Mr. Boone wasn't
> present.  I have, since this motion was filed and I was made aware of it,
> I've gone back and reviewed all of my files, all of my file notes which I was
> very particular in taking especially in light of the conflict that I had in
> representing Mr. Boone.  I say conflict not in the ethical sense but in the
> personal sense, in the interpersonal sense.  I've gone back and reviewed
> all of my notes as to why he was not brought.
>
> Q Based on your recollection of the events and the matters that were
> going to be perpetuated do you think that it would have been important to
> have him there from a fact standpoint or practical standpoint?
>
> A No, sir.  If I thought it would have been important to have him there I
> would have had him there.
>
> Q Was there anything that he could have contributed to the process?
>
> A No, sir.
>
> Q The witnesses that were being perpetuated, of course their role and
> what they had to say is evident in the deposition but did they have any
> discussions with Mr. Boone?
>
> A No, sir, they did not.
>
> Q Did they collect any evidence from Mr. Boone?
>
> A No, sir, they did not.

Q Did Mr. Boone ever indicate to you that he had any personal knowledge of the nature of the injuries that they should have seen or would have seen in the examination?

A No, sir, he did not.

Q If Mr. Boone had indicated to you that he in fact had raped the lady and knew something about the nature of the injuries would might the situation have been different?

A Yes, sir.

Q Did he ever indicate to you that he had any knowledge of what injuries the medical folks should expect to see or anything that would assist you in examining them, cross examining them?

A No, sir, he did not indicate that to me.

Q And of course I see in the trial testimony that you called him as a witness at trial?

A Yes, sir.

Q In the course of the trial it appears that he testified that he had no knowledge of what happened to the victim in this case or how she became injured or who sexually battered her.  Is that correct?

A That's correct.

Q Did he maintain that position with you throughout your representation?

A Yes, he did.

*Id*. at 10-12.  Mr. Dombrowsky further testified regarding the significance of the DNA

evidence, collected by Dr. Escobar and Nurse Soskis, in the context of the State's case:

Q With regard to this particular evidence in the context of the entire case that you tried how significant was the DNA in your view at the time?

A I have two answers to that.  Insofar as the DNA evidence coming in and there being a 1 in 44 billion chance that it was not Mr. Boone was very significant.  Yet I have another answer to that.  In my opinion now and

then was they could have completely done away with the DNA evidence and still would have had enough to convict Mr. Boone of this crime.

Q What else did the State have as you recall the evidence?

A They had eye witness identification.  Ms. Jefferies testified that Mr. Boone had come out to the house at least on one prior occasion.  It was quite unusual for a person to be coming out there.  Ms. Jefferies lives out in the middle of the woods and Mr. Boone, who she identified afterward, made a comment to her, why don't I come back and visit you tonight, which creeped her out.  And low and behold he did come back later on that night and raped her.

There was additional evidence of a shoe-print cast that was done that matched the shoes that Mr. Boone was arrested in.  Additionally there were at least one cigarette butt outside of the house that were the brand that Mr. Boone, I believed, smoked.  On cross examination and in depositions Ms. Jefferies said she didn't smoke nor had anybody working out at the house that smoked.  Those are the ones that really sort of stick out to me.  But I believe there's also a neighbor woman who said she saw Mr. Boone earlier maybe that week or that day and had made some comments to her and her young daughter and creeped them out as well.

Q So even without the DNA evidence in your view the evidence available to the State would have resulted in a conviction?

A Yes.

*Id*. at 12-13.

The record thus supports the state post-conviction trial court's determination that there was no deficient performance of trial counsel in not having Boone present at the depositions of Dr. Escobar and Nurse Soskis.  The State's motion to perpetuate the testimony of Nurse Soskis, filed pursuant to Florida Rule of Criminal Procedure 3.190, reflects that defense counsel had been contacted and "has no objection."  Doc. 26 Ex. K (Nurse Soskis).  The State filed a similar motion concerning Dr. Escobar; however, because the second page of that motion is not included in the record, it is not apparent

from the face of the motion whether defense counsel objected, although nothing in the

record indicates he did object and, as quoted above, counsel testified at the post-

conviction evidentiary hearing that he did not oppose the motions.  *Id*. Ex. L, Ex. Y at 9.

Counsel did not see a "reason to require them to come to the trial" as they "merely

collected the DNA evidence and did a medical examination of the victim."  *Id*. Ex. Y at

10.  Nothing indicates that, had defense counsel objected to taking these depositions to

perpetuate testimony, these witnesses would not have been to ultimately testify at a trial

(whether the trial took place as actually scheduled in May 2006 or was postponed).

*See* Ex. K (motion concerning Nurse Soskis, "an essential and material witness":

"According to information received by the undersigned Assistant State Attorney, Elaine

Soskis, R.N., may not be available to testify at the trial that is schedule[d] to begin with

May 25, 2006" because she "is scheduled for a medical procedure which may render

her unable to attend during the trial dates"), L (motion concerning Dr. Escobar, "an

essential and material witness": "According to information received by the undersigned

Assistant State Attorney, Dr. Javier Escobar, M.D. will not be available to testify at the

trial that is schedule[d] to begin May 25, 2006" because he "will be out of town during

the trial dates").

      "A defendant in Florida has a right to be present at a deposition to perpetuate

testimony."  Harrell v. State, 709 So. 2d 1364, 1370 n. 7 (Fla. 1998); *see* Fla. R. Crim.

P. 3.190(j).  Defense counsel testified that if he thought it important for Boone to be

present, he would have had him there.  *See, e.g.*, Hanks v. State, 786 So. 2d 634, 635-

36 (Fla. 1st DCA 2001) (explaining that "fundamental error may be waived by a tactical

decision on the part of defense counsel" and "[b]y agreeing to the admission of

[doctor's] deposition testimony, defense counsel [affirmatively] waived any claim of

error" regarding defendant's "constitutional right to confront this witness"). Although

Boone was not present for these video depositions, his attorney appeared and cross-

examined the witnesses. *See* Doc. 26 Exs. N2 (video deposition of Dr. Escobar played

during trial) and N3 (video deposition of Nurse Soskis played during trial).

Further, even if this was deficient performance by defense counsel, nothing

indicates Boone's absence from these depositions affected the outcome of the trial, as

the state post-conviction trial court found, and Boone suffered no prejudice given the

"more than sufficient evidence to support the conviction." Doc. 26 Ex. Y at 28. Defense

counsel testified at the evidentiary hearing, even without the DNA evidence, the State's

evidence would have resulted in a conviction. *Id*. at 13. Indeed, the State presented

evidence other than the DNA evidence, including the victim's identification of Boone as

the perpetrator, shoeprint evidence matching Boone's shoe from outside the window

entered by the perpetrator, and neighbors' testimony corroborating the victim's

description of the perpetrator's vehicle, which was the same as that driven by Boone,

and witnesses' testimony that Boone had no scratches on his face the evening before

but had scratches on his face when he was arrested (consistent with the victim's

testimony that she scratched the perpetrator). *Id*. Ex. N1 at 43-45, 55-56, 60, 79-80,

92-94, 102-03, 131-32, 151, 158, 172-74, 205-10, 228-39. Moreover, to the extent

Boone's IAC ground is based on Crawford v. Washington, the state post-conviction

court's rejection of the claim was not contrary to or an unreasonable application of the

law.  *See* <u>Crawford v. Washington</u>, 541 U.S. 36, 68 (2004) ("Where testimonial

evidence is at issue, . . . the Sixth Amendment demands what the common law

required: unavailability and a prior opportunity for cross-examination."); *see also* <u>Davis</u>

<u>v. Alaska</u>, 415 U.S. 308, 315-16 (1974) ("The main and essential purpose of

confrontation is to secure for the opponent the opportunity of cross-examination.");

<u>Mason v. Allen</u>, 605 F.3d 1114, 1123-24 (11th Cir. 2010) ("[N]otwithstanding the

Confrontation Clause violation, we cannot reverse a conviction or order a new

sentencing hearing if the error is harmless. . . . In habeas proceedings, we review

whether a constitutional violation is harmless by determining 'whether the error had

substantial and injurious effect or influence in determining the jury's verdict.' . . . We

analyze the effect of the Confrontation Clause violation by looking at several factors,

including 'the importance of the witness' testimony in the prosecution's case, whether

the testimony was cumulative, the presence or absence of evidence corroborating or

contradicting the testimony of the witness on material points, . . . and, of course the

overall strength of the prosecution's case.'" (citations omitted)).

Based on the foregoing, Boone has not shown the state courts' rulings rejecting

this IAC claim resulted in a decision that was either (1) contrary to, or involved an

unreasonable application of, clearly established U.S. Supreme Court precedent, or (2)

based on an unreasonable determination of the facts in light of the evidence presented

in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  Boone is not entitled to

federal habeas relief, and this ground should be denied.

**Ground 2**: IAC – Failure to Secure Expert Shoe Print Witness

In his second ground, Boone asserts his trial counsel rendered ineffective

assistance "by failing to secure expert witness and challenge the sufficiency of the

State's case."  Doc. 10 at 4.  Boone asserts he requested trial counsel to obtain a shoe

print expert as "two state agencies are showing different casts being used to extract

shoe-print comparisons from the crime scene."  *Id*. at 4d.  Boone further asserts trial

counsel "was required to file a motion to suppress the shoe-print evidence, arguing the

inconsistent facts of two different cast material, and the shoe-print impression in the

cast examine by (FDLE) shoe-print expert did not match the Petitioner's footwear."  *Id*.

at 4e.

In its answer, Respondent asserts that Petitioner submitted a substantially

similar claim to the state post-conviction trial court as the second ground in his Rule

3.850 motion.  Doc. 26 at 17.  Respondent explains the state court denied relief,

Petitioner appealed, and the First DCA per curiam affirmed the state post-conviction

trial court's order.  *Id*. at 17-18.  Respondent asserts the record supports the state

court's findings, such findings are entitled to deference, and Petitioner has offered

nothing to rebut the factual determinations.  *Id*. at 20-21.

In his reply, Boone argues the record proves only a partial shoe print was

discovered and photographed by Captain Massey from the Jefferson County Sheriff's

Department, and Deputy Knecht testified in his deposition that the cast he did was not

good.  Doc. 32 at 8.  Boone further argues, "Respondent has miscomprehended the

Petitioner's contention of the two different materials that were testified to by the State's

expert witnesses, that the two materials that were used is distinguished between the two kinds of materials that were described at the trial." *Id*.  Boone requests this Court hold an evidentiary hearing. *Id*. at 9.

As Respondent points out, Petitioner Boone presented this ground as the second claim in his state Rule 3.850 motion.  *See* Doc. 26 Ex. V at 6-9.  The state post-conviction trial court denied the claim, making the following findings:

> Defendant alleges ineffective assistance of counsel for failure to move the Court for a shoe-print expert to examine the inconsistencies in the FDLE and Jefferson County Sheriff's Department shoe-print results, after which counsel should have filed a motion to suppress the shoe-print evidence.  As the State explains in its response, Defendant's allegation of inconsistency, based on trial witnesses describing the shoe-print cast as being made using "plastic of paris" (actually plaster of paris) as well as "Dead Stone," is without merit.  The record clearly shows that both descriptions refer to the same shoe-print cast.  *Exh. 1 - Trial Trans., pp. 205-10; 228-40*.  Because there is no inconsistency, there was no basis for counsel to move for a shoe-print expert or to suppress the evidence, and counsel was not deficient in failing to do so.
>
> Additionally, Defendant does not show prejudice.  His implication that the shoe-print evidence was the only evidence linking him to the crime scene is misleading.  Even without the shoe-print, the State introduced the eyewitness testimony of the victim, the corroborating testimony of neighbors, evidence of injuries to the victim, and DNA and fingerprint evidence.  *Exh. 1, pp. 39-62; 81-136; 142-98, 212-13; 225-28; 247-89; Ex. 2 - Jury Trial Excerpts: Video Depositions of Dr. Escobar and Ms. Soskis.*

Doc. 26 Ex. Y at 47-48.  The state post-conviction trial court's rulings, affirmed on appeal without opinion, are entitled to AEDPA deference and are supported by the record.  *See* 28 U.S.C. § 2254(d); <u>Harrington</u>, 131 S.Ct. at 784-85 (2011); <u>Wright</u>, 278 F.3d at 1255 (11th Cir. 2002).

In particular, the trial transcript supports the state post-conviction court's findings that there was no inconsistency in the witnesses' descriptions of the shoe-print cast and both descriptions refer to the same shoe-print cast, State's Exhibit 11. *See* Doc. 26 Ex. N1 at 205-10, 228-39.  Further, even assuming any deficient performance, similar to the analysis of Ground 1, the record supports the state court's finding that Boone has not shown prejudice given all the other evidence presented by the State.  Boone has not shown the state courts' rulings rejecting this IAC claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### <u>Ground 3</u>: IAC – Failure to Investigate FDLE and DNA Evidence

In his third ground, Boone asserts trial counsel filed a motion to withdraw and Petitioner filed a pro se motion to appoint new counsel because of a conflict, involving counsel's failed to investigate the State's FDLE and DNA evidence.  *Id*. at 5-5c.  Boone indicates he requested trial counsel "investigate the DNA evidence the prosecution refused to disclose . . . [and] to demand disclosure of this evidence from the State, for an opportunity to investigate, review, and test to determine the probative value."  *Id*. at 5b.  Boone asserts this evidence would have proven that he was not the perpetrator of the charged crimes.  *Id*.  Boone explains that, two days before trial, the State "delivered the graphs of the DNA profiles from the FDLE Crime Lab" and "[t]he results revealed two (2) locations were not interpretable or obtained," and "[t]his evidence was crucial to

the State's case." *Id*. Boone asserts that trial counsel's failure to investigate the DNA evidence, demand disclosure of the graphs of the DNA profiles from the FDLE Crime Lab, or request a continuance "when it had become apparent that the State intended to use DNA enhancement graphs which profiles initially did not match all (13) markers of the Petitioner," prejudiced Boone's defense and "[t]hat feeble attempt created more conflict with Petitioner Boone in that trial counsel failed to prepare and subject the prosecution's case to a testing process." *Id*. Petitioner asserts that a defense DNA evidence investigation "would have revealed favorable evidence for the defense," trial counsel then "would have had the ability to 'motion the court to suppress' the evidence," and "there is a great probability the DNA evidence would have been suppressed." *Id*. at 5c.

In its answer, Respondent asserts that Petitioner submitted a substantially similar claim to the state post-conviction trial court as the third ground in his Rule 3.850 motion. Doc. 26 at 22. Respondent explains the state court denied relief, Petitioner appealed, and the First DCA per curiam affirmed the state post-conviction trial court's order. *Id*. at 22-24. Respondent asserts the record supports the state court's findings, such findings are entitled to deference, and Petitioner has offered nothing to rebut the factual determinations. *Id*. at 25-27. Respondent asserts that, as found by the state court, Petitioner's counsel's investigation of the DNA evidence was reasonable as was his strategic decision not to obtain a defense expert analysis of the evidence. *Id*. at 27.

In reply, Petitioner contends "trial counsel's assertion was unreasonable in light of the fact that trial counsel only had the general report of the FDLE's results providing

that the Petitioner's DNA did not match all (13) markers and this fact calls into question as to the reliability of the two (2) Loci D18 S51 and D7S820 not meeting the threshold required."  Doc. 32 at 11.  Petitioner argues that, given "the relevant facts and objective standards governing the right to effective assistance of counsel," his trial counsel's "omission and failure to investigate the DNA evidence, or demand disclosure of the graphs of the DNA profiles from the FDLE Crime Lab, or request a continuance which it had become apparent that the State intended to use the DNA enhancement graphs, and that were revealed two (2) days prior to the trial was clearly deficient performance of trial counsel in this case."  *Id*. at 11-12.  Petitioner asserts "the FDLE reports and results in the discovery package" were not "fully assuring and accurate."  *Id*. at 12. Petitioner argues that trial counsel's failure to secure a defense expert "cannot be viewed as strategic without alternative courses on the record" and "if trial counsel had additional relevant information pertaining to those following STR loci D18S51 and D7S820, counsel's decision of not needing an DNA expert to assist in the Petitioner's defense strategy, it is not evidence from the record."  *Id*. at 13.

As Respondent points out, Petitioner Boone presented this ground as the third claim in his state Rule 3.850 motion.  *See* Doc. 26 Ex. V at 9-12.  The state post-conviction trial court denied the claim, making the following findings:

> Defendant alleges counsel was ineffective for failing to investigate, at Defendant's request, the DNA evidence the State refused to disclose, failing to demand disclosure of the DNA evidence, and failing to request a continuance when it became apparent that the State would rely on contaminated DNA evidence which was disclosed only two days before trial.

> The trial testimony of FDLE crime laboratory analyst Valicia
> Hickman refutes Defendant's claim that the FDLE report indicates the
> DNA evidence was contaminated.  *Exh. 1 - pp. 240-89.*  Contrary to
> Defendant's allegation, the record shows that the State's DNA evidence
> was not disclosed two days before the trial.  At a hearing on Defendant's
> motion to dismiss court-appointed counsel held on April 24, 2006, remarks
> by both Defendant and counsel demonstrate that they received the DNA
> evidence long before the date of the hearing, which took place more than
> a month before trial.  *Exh. 3 - 4/24/06 hearing transcript.*  At that same
> hearing, counsel explained that based on his review of the DNA evidence
> and reports, and after the FDLE expert's deposition, he made a strategic
> decision not to hire a DNA expert because he felt it would produce
> additional inculpatory evidence.  *Exh. 3, pp. 7-8; Occhicone v. State*, 768
> So. 2d 1037, 1048 (Fla. 2000) (holding that "strategic decisions do not
> constitute ineffective assistance of counsel if alternative courses have
> been considered and rejected and counsel's decision was reasonable
> under the norms of professional conduct.").  Defendant has not shown
> deficient performance on the part of counsel.

Doc. 26 Ex. Z at 48-49.  The state post-conviction trial court's rulings, affirmed on

appeal without opinion, are entitled to AEDPA deference and are supported by the

record.  *See* 28 U.S.C. § 2254(d); <u>Harrington</u>, 131 S.Ct. at 784-85 (2011); <u>Wright</u>, 278

F.3d at 1255 (11th Cir. 2002).

In particular, the trial transcript supports the state post-conviction court's findings

regarding the testimony of Ms. Hickman, the FDLE crime laboratory analyst.  Ms.

Hickman testified that she performed the STR DNA testing in this case, how she

performed the testing, there was no contamination, and Mr. Boone's DNA matched the

foreign DNA profile from the victim's vaginal swab at 11 of 13 STR loci with the

frequency of such occurrence being approximately one in 48 billion.  Doc. 26 Ex. N1 at

244-80.  Further, as the state post-conviction trial court found, remarks by both Boone

and his attorney during a motion hearing on April 24, 2006, reflect that they had

received and reviewed the DNA evidence reports by that point, which was a month

before the trial started on May 25, 2006. *Id*. Ex. E at 7-8. Defense counsel stated at

that motion hearing on April 24, 2006, that he had deposed the State's DNA expert two

weeks earlier, and he made a strategic decision not to hire a defense DNA expert

because he "didn't want to have more evidence against" Boone. *Id*.

      The record thus supports the state post-conviction trial court's determination that

there was no deficient performance of trial counsel regarding the investigation of the

DNA evidence and strategic decision not to hire a defense DNA expert. Boone has not

shown the state courts' rulings rejecting this IAC claim resulted in a decision that was

either (1) contrary to, or involved an unreasonable application of, clearly established

U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the

facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C.

§ 2254(d)(1)-(2); *see, e.g.*, Waters v. Thomas, 46 F.3d 1506, 1518-19 (11th Cir. 1995)

(en banc) ("We cannot, and will not, second guess such [strategic] decisions" that "trial

counsel are called upon to make."); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092,

1099 ("[C]onsidering all the circumstances, we give great deference to choices dictated

by reasonable strategy."). This ground should be denied.

### Ground 4: IAC – No Objection to DNA Profiles, Charts, and Diagrams

      In his fourth ground, Petitioner Boone asserts that trial counsel rendered

ineffective assistance by failing "to object to the introduction of electropherograms,

medical charts, and medical diagrams not corroborated by sworn testimony." *Id*. at 5.

He asserts this evidence was presented without him having the opportunity to confront and cross-examine Dr. Escobar and Nurse Soskis, who performed the test.  *Id*. at 5, 5c.

In its answer, Respondent asserts that Petitioner submitted a substantially similar claim to the state post-conviction trial court as the fourth ground in his Rule 3.850 motion.  Doc. 26 at 29.  Respondent explains the state court denied relief, Petitioner appealed, and the First DCA per curiam affirmed the state post-conviction trial court's order.  *Id*. at 29-30.  Respondent asserts the record supports the state court's findings, such findings are entitled to deference, and Petitioner has offered nothing to rebut the factual determinations.  *Id*. at 31-32.  Respondent asserts that there is nothing unreasonable in the state post-conviction court's determination that Petitioner's absence from the depositions of Dr. Escobar and Nurse Soskis did not affect the trial's outcome.  *Id*. at 32-33.

In reply, Petitioner contends <u>Crawford</u> required Dr. Escobar and Nurse Soskis to testify in person and the admission of this evidence violated his Sixth Amendment right to confront the witnesses against him.  Doc. 32 at 14-16.  Petitioner asserts that if these witnesses had come in person at trial, he would have been able to confront and cross-examine them, and proper cross-examination would have revealed that Dr. Escobar's testimony concerning his internal examination (noting a small amount of bleeding) conflicted with the findings of the FDLE DNA expert, Ms. Hickman (finding only semen and no blood).  *Id*. at 16.

As Respondent points out, Petitioner Boone presented this ground as the fourth

claim in his state Rule 3.850 motion.  *See* Doc. 26 Ex. V at 12-14.  The state post-

conviction trial court denied the claim, making the following findings:

> Defendant alleges ineffective assistance of counsel for failure to
> object to the State's improper introduction of evidence that was not
> corroborated by sworn testimony, including computer-enhanced
> electropherograms of DNA profiles prepared by FDLE and medical charts
> and diagrams prepared by Dr. Escobar and Nurse Soskis, who were not
> present at trial.  As to the DNA tests and diagrams, this claim is refuted by
> the record, which shows that Valicia Hickman, crime laboratory analyst at
> FDLE and the person who conducted the DNA testing and prepared the
> diagrams used to illustrate her findings, testified at trial.  *Exh. 1, pp. 240-
> 89*.  To the extent the claim relates to allegations regarding Dr. Escobar
> and Nurse Soskis, the Court orally denied the claim at the evidentiary
> hearing.

Doc. 26 Ex. Z at 49.  The state post-conviction trial court's rulings, affirmed on appeal

without opinion, are entitled to AEDPA deference and are supported by the record.  *See*

28 U.S.C. § 2254(d); Harrington, 131 S.Ct. at 784-85 (2011); Wright, 278 F.3d at 1255

(11th Cir. 2002).

In particular, similar to the analysis of Ground 3, *supra*, the trial transcript

supports the state post-conviction court's findings regarding Ms. Hickman, the FDLE

crime laboratory analyst.  In addition to testifying about how she performed the DNA

testing and the results thereof, Ms. Hickman testified at the trial regarding the charts

she had prepared, entered into evidence as exhibits in the case.  Doc. 26 Ex. N1 at

258-80.  Further, similar to the analysis of Ground 1, the record supports the state

court's findings regarding Dr. Escobar and Nurse Soskis, whose depositions were

admitted, with no objection, as perpetuated testimony together with the "sexual assault

management form testified to by Nurse Soskis and Dr. Escobar," and "the sexual

assault information sheet also testified to by both witnesses," and "the Tallahassee

Memorial Healthcare Emergency Room Chart for [the victim] that was testified to by Dr.

Escobar." Doc. 26 Ex. N1 at 218-19. As discussed in the analysis of Ground 1,

although Boone was not present for these depositions, his attorney appeared and

cross-examined the witnesses and, even if not having Boone present for the

depositions constituted deficient performance by defense counsel, Boone suffered no

prejudice given all the other evidence presented by the State.

The record supports the state court's rulings. Boone has not shown those

rulings rejecting this IAC claim resulted in a decision that was either (1) contrary to, or

involved an unreasonable application of, clearly established U.S. Supreme Court

precedent, or (2) based on an unreasonable determination of the facts in light of the

evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(1)-(2).

This ground should be denied.

### Ground 6: IAC – Failure to Object and Request Frye Hearing

In his sixth ground, Petitioner Boone asserts that trial counsel rendered

ineffective assistance by failing "to object, and move the court for a 'Frye Hearing' after

Prosecution offer[ed] expert witness Valicia Hickman['s] testimony that the DNA

evidence on vaginal swab taken from victim match[ed] Petitioner['s] genetic type, and

her opinion that such match would occur, without Mrs. Hickman's qualification to give

expert opinion in the error of population." Doc. 10 at 5e. Boone asserts that if counsel

had objected and moved for a Frye hearing "to determine whether: (1) the polymerase

chain reaction (PCR) DNA testing method employed by State's expert met the Frye test for admissibility at trial; (2) whether the state's expert witness V. Hickman qualified as an expert regarding the probability calculations, Petitioner would have had the opportunity to call his own statistician or population geneticist to challenge the State's evidence regarding general acceptance in the scientific community of the calculation techniques employed."  *Id*. at 5f.

In its answer, Respondent asserts that Petitioner submitted a substantially similar claim to the state post-conviction trial court as the sixth ground in his Rule 3.850 motion.  Doc. 26 at 42.  Respondent explains the state court denied relief, Petitioner appealed, and the First DCA per curiam affirmed the state post-conviction trial court's order.  *Id*. at 42-43.  Respondent asserts the state court properly found, as a matter of law, that Hickman was qualified as a DNA expert and that population genetic frequency evidence has long been generally accepted in the scientific community.  *Id*. at 45. Respondent asserts that if defense counsel had objected, such objections would have been overruled.  *Id*. at 46.

In reply, Petitioner essentially restates his argument.  *See* Doc. 32 at 20-21. Petition argues the State failed to show "complete details of the State expert witness Mrs. Hickman's calculation method, which made it impossible to evaluate whether the method Mrs. Hickman used to calculate the State's population frequency statistics, along with her qualification to satisfy Frye test."  *Id*. at 21.

As Respondent points out, Petitioner Boone presented this ground as the sixth

claim in his state Rule 3.850 motion.  *See* Doc. 26 Ex. V at 15-16.  The state post-

conviction trial court denied the claim, making the following findings:

> Defendant claims counsel was ineffective for failing to object to the
> testimony of State DNA expert witness Valicia Hickman and failing to
> move for a *Frye* hearing regarding Ms. Hickman's testimony.  The record
> shows Ms. Hickman testified as to her qualifications and methods and the
> Court ruled that she could proceed as an expert.  *Exh. 1, pp. 240-43.*
> There was no basis for counsel to move for a *Frye* hearing because such
> hearings are necessary only when a party seeks to introduce new and
> novel scientific evidence, and population genetic frequency evidence has
> long been generally accepted in the scientific community.  *McDonald v.*
> *State*, 952 So. 2d 484, 495-96 (Fla. 2007).  Counsel cannot be held
> ineffective for failing to file a nonmeritorious motion.

Doc. 26 Ex. Z at 49-50.  The state post-conviction trial court's rulings, affirmed on

appeal without opinion, are entitled to AEDPA deference and are supported by the

record.  *See* 28 U.S.C. § 2254(d); <u>Harrington</u>, 131 S.Ct. at 784-85 (2011); <u>Wright</u>, 278

F.3d at 1255 (11th Cir. 2002).

In particular, similar to Grounds 3 and 4, the trial transcript supports the state

post-conviction court's findings regarding Ms. Hickman.  She testified regarding her

education, employment, and previous qualification to testify as an expert in DNA

testing.  Doc. 26 Ex. N1 at 240-43.  "Under Florida law, a <u>Frye</u> hearing is utilized to

determine if an expert scientific opinion is admissible" as "[s]uch opinion must be based

on techniques that have been generally accepted by the relevant scientific community

and found to be reliable."  <u>Zack v. State</u>, 911 So. 2d 1190, 1197-98 (Fla. 2005); see

Frye, 203 F. - at 1014.  A <u>Frye</u> hearing is not required for admissibility of an expert

scientific opinion unless the science is "new or novel."  <u>Zack</u>, 911 So. 2d at 1198. The

Florida Supreme Court has taken "judicial notice that DNA test results are generally accepted as reliable in the scientific community, provided that the laboratory has followed accepted testing procedures that meet the <u>Frye</u> test to protect against false readings and contamination."  <u>Hayes v. State</u>, 660 So. 2d 257, 265 (Fla. 1995). Further, Florida courts have explained that "the PCR method of DNA testing is now generally accepted by the scientific community and is not subjected to <u>Frye</u> testing." <u>Zack</u>, 911 So. 2d at 1198 n.3; *see* Doc. 26 Ex. N1 at 245 (testimony of Hickman explaining her testing: "I then copy that DNA hundreds of millions of times and put it on, which is called PCR, Polymerase Chain Reaction, then that sample is placed on a genetic analyzer instrument, which will allow me to hook to a computer and allows me to actually view the DNA profile.").  Florida courts have explained the STR method, a subtype of PCR testing, is also generally accepted by the relevant scientific community. <u>Lemour v. State</u>, 802 So. 2d 402, 406 and n.5 (Fla. 3d DCA 2001); *see* Doc. 26 Ex. N1 at 244 (testimony of Hickman explaining her testing: "We perform STR DNA testing and that stands for Short Tandem Repeat.").  As referenced above, Ms. Hickman testified extensively concerning the testing and analysis procedures.  Doc. 26 Ex. N1 at 244-80. Where, as here, a <u>Frye</u> hearing was not necessary to determine the admissibility of the expert opinion, counsel cannot be deficient for failing to request such hearing.  *See* <u>McDonald v. State</u>, 952 So. 2d 484, 495-96 (Fla. 2006) ("The circuit court stated that at the time of McDonald's 1995 trial, there was a general acceptance in the scientific community for forensic population genetics to permit Agent Vick's testimony, including his population frequency testimony.  We find no error in the trial court's conclusion that

trial counsel was not ineffective for failing to request a Frye hearing.").  *See also, e.g.*,

Mack v. Buss, No. 11-61328-CIV, 2011 WL 6102881 at *4 (S.D. Fla. Dec. 7, 2011)

(order adopting report of magistrate judge denying § 2254 petition and explaining,

among other things, DNA evidence is not new or novel and such evidence is "generally

accepted in Florida as long as the testing procedures were properly conducted" and,

although petitioner "alleges that there were faulty testing procedures in his case, he fails

to identify what procedures were faulty or how they affected the test results").

Boone has not shown the state courts' rulings rejecting this IAC claim resulted in

a decision that was either (1) contrary to, or involved an unreasonable application of,

clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable

determination of the facts in light of the evidence presented in the state court

proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

### Ground 5: Prosecution Intentionally Withheld Evidence

In his fifth and remaining grounds, Petitioner Boone asserts claims of trial court

error.  Specifically, in Ground 5, Boone argues "the Prosecution willfully and

intentionally thwart[ed] the Petitioner in his preparation of defense by withholding

favorable evidence," specifically DNA evidence reports from FDLE, electropherograms

of DNA profiles, and photographs of Petitioner's arrest, and if this evidence had "been

disclosed in a timely manner, would have allowed the defense to investigate and make

timely objections of the evidence."  Doc. 10 at 5d.  Boone asserts that, by "withholding

this evidence until the eve of trial," the prosecution "effectively and conveniently denied

the Petitioner his right to challenge the evidence through pre-trial 'motion to suppress.'"

Id.  Boone asserts he "was denied his right to challenge any of the DNA evidence prior to trial without asking for a continuance."  *Id*. at 5e.

In its answer, Respondent indicates that Petitioner submitted this claim to the state post-conviction trial court as the fifth ground, alleging prosecutorial misconduct, in his Rule 3.850 motion.  Doc. 26 at 35.  Respondent explains after the state court denied relief without reaching the merits, Petitioner appealed that order and stated in his brief that "[t]he trial court is correct in its denial of ground five" but he should have had the opportunity to correct the deficiency pursuant to Spera v. State, 971 So. 2d 754 (Fla. 207); the First DCA per curiam affirmed the state post-conviction trial court's order.  *Id*. at 35-36.  Respondent asserts that this claim, having been rejected by the state court as procedurally barred under state law, is not exhausted.  *Id*. at 37.  Respondent further asserts that, because Boone cannot now return to state court to exhaust this claim, it is procedurally defaulted.  *Id*. at 38-39.  Respondent also asserts that even if Boone presented sufficient claims to excuse the procedural default, he is not entitled to relief because he has not shown cause, something external to Petitioner, that prevented him from raising the claim.  *Id*. at 39-40.  Respondent explains that Boone was granted leave to file a pro se Initial Brief in his direct (Anders) appeal and he did so, but he did not raise this claim.  *Id*. at 40.  Moreover, Boone has not asserted a claim of actual innocence.  *Id*. at 41.  Therefore, Respondent maintains this ground should be denied. *Id*. at 41-42.

In reply, Boone restates his argument.  Doc. 32 at 19-20.  Boone "maintains his argument that was argued in his Initial Brief" and his § 2254 petition.  *Id*. at 20.

As Respondent points out, Petitioner Boone presented this ground as the fifth claim in his state Rule 3.850 motion.  *See* Doc. 26 Ex. V at 14-15.  The state post-conviction trial court denied the claim, making the following findings:

> Defendant alleges prosecutorial misconduct because the State withheld evidence favorable to the defense until days before the commencement of trial, thus preventing Defendant from challenging the evidence through a motion to suppress.  Claims of prosecutorial misconduct are not cognizable in a motion for postconviction relief filed pursuant to Florida Rule of Criminal Procedure 3.850.  *Johnson v. State*, 985 So. 2d 1215 (Fla. 1st DCA 2008).

Doc. 26 Ex. Z at 49.  The court thus denied the claim on a state procedural basis, that the claim could have been raised on direct appeal and is not cognizable in a collateral post-conviction motion.  *See* Johnson, 985 So. 2d at 1215.  The First DCA affirmed the order on appeal without an opinion and is presumed to have affirmed the procedural bar.  *See* Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("[W]here, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.").  The state courts' rejection of this claim, therefore, was based on an independent and adequate state ground of procedural bar.  *See, e.g.,* Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009) ("Florida law bars claims in a state post-conviction proceeding that could have been raised on direct appeal.").  Boone has not established cause for this default and prejudice resulting therefrom, or a fundamental miscarriage of justice.  *See, e.g.,* Tower v. Phillips, 7 F.3d 206, 210-11 (11th Cir. 1993); *see also*, e.g., Bell v. Sec'y, Fla. Dep't of Corr., No. 5:11cv411-MP/EMT, 2013 WL 5436719 at *11-12 (N.D. Fla. Sept. 27, 2013).  This ground should be denied.

## <u>Ground 7</u>: Erroneous Admission of Similar Fact Evidence

In his seventh ground, Boone asserts the state trial court abused its "judicial authority in allowing the similar fact evidence of other crimes, wrongs, or acts to be introduced at trial, in violation of the Petitioner's state and federal constitution[al] rights." Doc. 10 at 6b (labeled as "GROUND ONE" in pages attached to second amended § 2254 petition).  Boone argues the evidence the State used "was inadmissible because the only relevancy was solely to prove bad character of the Petitioner."  *Id*.

In its answer, Respondent asserts federal habeas relief cannot be issued based on perceived state law errors.  Doc. 26 at 49.  Respondent asserts Petitioner's sole basis for seeking exclusion of the subject evidence was state evidentiary law, and no federal claim was ever presented to the state trial court.  *Id*. at 50.  Respondent points out that Boone raised this point in his pro se Initial Brief, cited only Florida evidentiary law, and nothing in his brief "place[d] the state appellate court on alert that he was alleging a 'violation of the Constitution or laws or treaties of the United States.'"  *Id*. at 51.  Thus, Respondent concludes Petitioner has not exhausted this ground and, because he cannot now return to state court, it is procedurally defaulted.  *Id*. at 53.  Respondent further maintains that because Petitioner has not alleged cause and prejudice or actual innocence to excuse the default, he is barred from raising it now.  *Id*. at 53-54.  Respondent also argues that, even if Boone presented claims to excuse his procedural default, he is not entitled to relief because he has not shown cause, something external to Petitioner, that prevented him from raising the claim.  *Id*. at 54.  Respondent explains that Boone was granted leave to file a pro se Initial Brief in his

direct (<u>Anders</u>) appeal and he did so, but he did not raise this claim: "Petitioner cannot establish cause because articulation of this claim of error in the admission of evidence at trial in both the state trial and appellate courts as one involving the denial of a right under the Federal Constitution was matter entirely within Petitioner's control; hence, there is no external impediment." *Id*. Moreover, Boone has not asserted a claim of actual innocence. *Id*. at 55. Therefore, Respondent maintains this ground should be denied. *Id*.

In reply, Petitioner Boone asserts "Respondent's assessment is incorrect and misleading." Doc. 32 at 22. Boone argues this claim was fairly presented "to the state circuit court by referring to due process and citing state cases employing constitutional analysis, quoting the (Williams Rule)." *Id*.

Under Florida law, similar fact evidence of other crimes, called <u>Williams</u> Rule evidence, "is admissible when relevant to prove a material fact in issue," such as motive, intent, preparation, or plan. Fla. Stat. § 90.404(2)(a); <u>Williams v. State</u>, 110 So. 2d 654 (Fla. 1959); <u>Lamontagne v. Sec'y, Dep't of Corr.</u>, 433 F. App'x 746, 749 (11th Cir. 2011). In this case, the State filed a Notice of Intent to Introduce Similar Fact Evidence of Other Crimes, Wrongs, or Acts, including allegations that Boone had, a few days before the incident giving rise to the charges against him, approached the victim and neighbors of the victim with similar inquiries and offers to cut trees and grass, requests to use the phone, as well as a statement by Boone to one of the neighbors that "maybe a 'ride on his pole' would fix her" medical condition. Doc. 26 Ex. H. This motion cites only Florida statutes. *Id*. In response, Boone's trial counsel filed a motion

in limine seeking to preclude the State from introducing this evidence.  *Id*. Ex. I.  This motion also cites only Florida statutes.  *Id*.  The trial court held a hearing on the motion on May 22, 2006.  *Id*. Ex. J.  At the hearing, the parties cited only state case law and statutes.  *Id*.  The prosecutor indicated she wanted to use the evidence to prove identity and modus operandi.  *See id.* at 5, 10-14. The defense argued the evidence "is inadmissible under [Florida Statute 90.]404(2)(a) because the State is moving to enter it into evidence solely to prove bad character or propensity."  *Id*. at 5.  The trial court denied the defense motion.  *Id*. at 14.

As indicated above, on direct appeal, Boone's counsel filed an <u>Anders</u> brief. Although Boone filed a pro se appellate brief challenging the trial court's admission of this evidence, as in the trial court, he cited only state law in support of his point.  See Doc. 26 Ex. T.  Thus, as Respondent indicates, Boone did not exhaust this claim as one alleging a federal constitutional violation, and Boone has not alleged or shown cause for the default and actual prejudice, nor has he alleged or shown actual innocence or a fundamental miscarriage of justice.  *See* Doc. 26 at 53-55.

Further, as Respondent also indicates, this ground alleges a claim of state law error, specifically a state trial court evidentiary ruling.  "[F]ederal habeas corpus relief does not lie for errors of state law."  <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990); *see* <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) (explaining that errors that do not infringe on defendant's constitutional rights provide no basis for federal habeas corpus relief). "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."  <u>Carrizales v.</u>

Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983); *accord, e.g.*, McCullough v.

Singletary, 967 F.2d 530, 535 (11th Cir. 1992).  "Indeed, the general rule is that a

federal court will not review a trial court's actions with respect to the admission of

evidence."  Shaw v. Boney, 695 F.2d 528, 530 (11th Cir. 1983).  "A state evidentiary

violation in and of itself does not support habeas corpus relief" and "[b]efore such relief

may be granted, the violation must rise to the level of a denial of 'fundamental

fairness.'" *Id.*; *see* Jacobs v. Singletary, 952 F.2d 1282, 1296 (11th Cir. 1992) ("We

review state court evidentiary rulings on a petition for habeas corpus to determine only

'whether the error, if any, was of such magnitude as to deny petitioner his right to a fair

trial.' . . . Erroneously admitted evidence deprives a defendant of fundamental fairness

only if it was a 'crucial, critical, highly significant factor' in the [defendant's] conviction."

(citations omitted)); Link v. Tucker, 870 F. Supp. 2d 1309, 1324-30 (N.D. Fla. 2012)

(district court order adopting magistrate judge's report and recommendation to deny

§ 2254 petition alleging, among other things, state trial court abused its discretion by

admitting evidence of petitioner's prior conduct).

A review of the record reflects that admission of the challenged evidence in this

case does not appear erroneous under Florida state law.  *See* Doc. 26 Ex. J at 10-13;

§ 90.404(2)(a), Fla. Stat. (2005); s*ee, e.g.*, Durousseau v. State, 55 So. 3d 543, 552

(Fla. 2010) ("[W]e hold that the collateral crime evidence did exhibit unique similarities

that established a modus operandi sufficient for proving identity.  Pursuant to section

90.404(2)(a), evidence of other crimes, acts or wrongs is admissible to prove identity.");

Buenoano v. State, 527 So. 2d 194, 197 (Fla. 1988) ("Under the Williams rule evidence

of other crimes, wrongs and acts is admissible if it is relevant to and probative of a

material issue even though the evidence may indicate the accused has committed other

uncharged crimes or may otherwise reflect adversely upon the accused's character.

Section 90.404(2)(a), Florida Statutes, (1983), codifies the ruling in Williams v. State

and lists the purposes for which such evidence is deemed to be admissible: proof of

motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of

mistake or accident.").  Moreover, even if erroneous, such admission did not deprive

Boone of a fundamentally fair trial, as the State presented far more powerful evidence

of Boone's guilt, including the victim's identification, shoeprint evidence, and DNA

evidence.

Finally, Boone has pointed to no U.S. Supreme Court precedent holding that the

admission of this type of prior act evidence in these circumstances violates the federal

constitutional guarantee of due process and a fair trial.  *See* Link, 870 F. Supp. 2d at

1328-29.  Therefore, he has not shown the state court's rejection of his claim, assuming

it was fairly presented, was contrary to or an unreasonable application of clearly

established federal law.  *See id.*  This ground should be denied.

### Ground 8: Denial of Motions to Withdraw and Request for DNA Expert

In his eighth and final ground, Petitioner Boone asserts the state trial court

abused its "judicial authority in denying trial counsel['']s and [Petitioner's] pro se motion

to withdraw, and verbal request for the appointment of DNA expert, in violation of the

Petitioner's state and federal constitution[al] rights."  Doc. 10 at 6c (labeled as

"GROUND TWO" in pages attached to second amended § 2254 petition).  Boone

explains that "[t]his issue is not to argue Mr. Dombrowsky['s] ineffectiveness, the issue is to focus of a conflict created between the Petitioner and counsel." *Id*. at 6d.  Boone asserts the conflict with counsel was brought to the trial court's attention in mid-March 2006 when defense counsel refused to interview or investigate defense witnesses or seek appointment of a DNA expert. *Id*.

In its answer, Respondent indicates Petitioner presented these claims of trial court error in the second point raised in his pro se Initial Brief filed on direct appeal. Doc. 26 at 55.  Respondent explains the alleged errors occurred first with the trial court's denial of both Petitioner's pro se "Motion to Dismiss [Counsel]" and his pro se request for appointment of a DNA expert at a hearing on April 24, 2006, and then with the court's subsequent denial of defense counsel's "Motion to Withdraw as Court Appointed Counsel" filed May 10, 2006." *Id*. at 55-56.  Respondent indicates that defense counsel Dombrowsky testified at the evidentiary hearing that the state trial court held a hearing pursuant to Nelson v. State, 274 So. 2d 256 (Fla. 4th DCA 1973), on April 24, 2006, prompted by Boone's pro se motion to dismiss counsel. *Id*. at 56. Respondent explains that, other than a motion to discharge counsel, a pro se pleading is deemed a nullity as a matter of Florida law; for this reason, the state trial court denied Boone's pro se motion to appoint a DNA expert. *Id*. at 57-58.  Respondent asserts that state law formed the basis of both the trial court's denial of the pro se motion to discharge counsel and the denial of the pro se motion to appoint a DNA expert, and federal habeas relief cannot be issued based on perceived errors of state law. *Id*. at 59-60.  Respondent further asserts that, as to the state trial court's denial of defense

counsel's motion to withdraw, Boone is also not entitled to relief.  *Id*. at 61-65.

Respondent explains that, as the state trial court knew the basis of the conflict between

Boone and defense counsel concerned trial preparation and strategy, that court's denial

of the motion to withdraw was not "so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded

disagreement."  *Id*. at 65 (quoting Harrington v. Richter, 131 S.Ct. 770, 787 (2011)).

Respondent concludes, therefore, this ground should be denied.

In reply, Boone "maintains his argument in his amended Initial Brief, DCA case

No. 1D06-2900, that he has not been afforded his right under the due process clause in

that when trial court denied trial counsel's motion to withdraw as counsel because of an

actual conflict of interest, and refused to appoint defense DNA expert."  *Id*. at 23-24.

Boone indicates that defense counsel spoke with the Ethics Counsel as The Florida Bar

and independent counsel, both of whom advised defense counsel that he should

withdraw.  *Id*. at 24.

To the extent this ground concerns defense counsel's decision not to obtain a

DNA expert, such decision was reasonable trial strategy and did not constitute IAC, as

explained in the analysis of Ground 3, *supra*.  To the extent this ground challenges the

trial court's denial of Boone's request to discharge his court-appointed attorney and

counsel's motion to withdraw, this ground alleges claims of state law error.  As

explained in the analysis of Ground 7, *supra*, "federal habeas corpus relief does not lie

for errors of state law," Lewis, 497 U.S. at 780, and "[a] state's interpretation of its own

laws or rules provides no basis for federal habeas corpus relief, since no question of a

constitutional nature is involved," <u>Carrizales</u>, 699 F.2d at 1055.  This ground should be

denied.  *See, e.g.*, <u>Mundy v. Sec'y, Dep't of Corr.</u>, No. 5:11cv71-RH/GRJ, 2014 WL

1254088 at *1, *9 (N.D. Fla. Mar. 26, 2014) (order denying § 2254 petition and adopting

magistrate judge's report and recommendation's treatment of petitioner's challenge to

state courts' rulings regarding effort to discharge court-appointed attorney: "Petitioner's

<u>Nelson</u> claim challenges the application of state law.  It does not raise a federal

constitutional claim and therefore is not cognizable in federal habeas review.").

## Conclusion

For the reasons stated above, Boone has not shown entitlement to federal

habeas corpus relief.  Accordingly, the second amended § 2254 petition (Doc. 10)

should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the U.S. District

Courts  provides that "[t]he district court must issue or deny a certificate of appealability

when it enters a final order adverse to the applicant," and if a certificate is issued "the

court must state the specific issue or issues that satisfy the showing required by 28

U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be

filed, even if the court issues a certificate of appealability.

Petitioner cannot make a substantial showing of the denial of a constitutional

right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483-84 (2000)

(explaining how to satisfy this showing) (citation omitted).  Therefore, the Court should

deny a certificate of appealability in its final order.  Leave to appeal in forma pauperis

should also be denied, as an appeal would not be taken in good faith.  *See* Fed. R. App.

P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, court may certify

appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

The second sentence of Rule 11(a) provides that "[b]efore entering the final

order, the court may direct the parties to submit arguments on whether a certificate

should issue."  Petitioner shall make any argument as to whether a certificate should

issue by filing objections to this report and recommendation.

## Recommendation

It is therefore respectfully **RECOMMENDED** that the second amended § 2254

petition for writ of habeas corpus (Doc. 10) be **DENIED**, a certificate of appealability be

**DENIED**, and leave to appeal in forma pauperis be **DENIED**.  The Clerk shall substitute

Michael D. Crews for Kenneth S. Tucker as Respondent.

**IN CHAMBERS** at Tallahassee, Florida, on May 20, 2014.

s/  Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and
recommendations within fourteen (14) days after being served with a copy of this
report and recommendation.  A party may respond to another party's objections
within fourteen (14) days after being served with a copy thereof.  Failure to file
specific objections limits the scope of review of proposed factual findings and
recommendations.**